IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-02280-MJW

RICHARD A. MARTIN JR.,

Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

Defendant.

## ORDER AFFIRMING ALJ'S DECISION DENYING SOCIAL SECURITY BENEFITS

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

Upon consent of the parties and pursuant to the Order of Reference dated

April 10, 2015 (Docket No. 21), this civil action was referred to the Magistrate Judge "for

all purposes" pursuant to the Pilot Program to Implement the Direct Assignment of Civil

Cases to Full Time Magistrate Judges and Title 28 U.S.C. § 636(c).

In this case, plaintiff, Richard A. Martin, Jr., challenges the final decision of the

Commissioner of Social Security ("Commissioner") denying plaintiff's applications for

disability insurance benefits ("DIB") and Supplemental Security Income pursuant to

Titles II and XVI of the Social Security Act "(the "Act"), 42 U.S.C. §§ 401-433, 1381-

1383c.  Jurisdiction is proper under  section 205(g) of the Social Security Act, 42 U.S.C.

§ 405(g) (the "Act").

On his application, plaintiff alleged disability as of July 1, 2005  (Administrative

Record ["AR']') at 158).  However, at his first hearing, the onset date was changed to

2

June 4, 2009 (AR at 381), which is the date he was released on parole from prison

where he was serving a sentence for sexual assault on a child (AR 382-83).  After that

video hearing before Administrative Law Judge ("ALJ") Richard Maddigan on

November 23, 2010 (AR 378-99), plaintiff's claim was denied in a written decision dated

March 18, 2011 (AR 56).  The Appeals Council, however, remanded the case back to

the ALJ with specific instructions on July 27, 2012.  (AR 70-72).  The ALJ then

conducted a hearing on December 19, 2012 (AR 400-10), which was continued on April

15, 2013 (AR 412-47).  At the latter hearing, plaintiff, his wife, and vocational expert

("VE") Robert Van Iderstine testified.  On April 26, 2013, ALJ Maeddigan issued an

unfavorable decision.  (AR 14-28).  The Appeals Council denied plaintiff's Request for

Review on June 25, 2015 (AR 6-8), and thus the ALJ's April 26, 2013, decision is the

final decision of the Commissioner.

Plaintiff now appeals that final decision.  More specifically, plaintiff raises the

following errors the ALJ allegedly committed in rendering his decision: (1) the ALJ failed

to develop and adequate record; (2) the ALJ failed to apply the Social Security

Regulations governing the weight to be given to the opinions of the treating physicians;

(3) the ALJ committed error in his determination of the plaintiff's residual functional

capacity ("RFC"), and the ALJ failed to apply the Social Security Regulations governing

the determination and credibility of the plaintiff.

The court has very carefully reviewed the Complaint (Docket No. 1), defendant's

Answer (Docket No.6), plaintiff's Opening Brief (Docket No. 12), defendant's Response

Brief (Docket No. 15), plaintiff's Reply (Docket No. 16), the entire case file including the

3

AR (Docket No. 7),[1] and the applicable case law, statutes, and regulations.  The court

now being fully informed makes the following findings, conclusions of law, and Order.

The court finds, substantially for the reasons stated in the defendant's very thorough

Response Brief (Docket No. 15), that the ALJ's decision denying benefits should be

affirmed.  The court adopts and incorporates the Statement of the Facts section

contained in the defendant's Response Brief.

## STANDARD OF REVIEW

This court's review of the ALJ's determination is limited to determining whether

the ALJ's decision is supported by substantial evidence and whether the Commissioner,

through the ALJ, applied the correct legal standards.  See Wall v. Astrue, 561 F.3d

1048, 1052 (10th Cir. 2009).  "Substantial evidence is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.  It requires more

than a scintilla, but less than a preponderance."  Id. (quoting Lax v. Astrue, 489 F.3d

1080, 1084 (10th Cir. 2007)).  "Evidence is not substantial if it is overwhelmed by other

evidence in the record."  Grogan v. Barnhart, 399 F.3d 1257, 1261-62 (10th Cir. 2005).

In reviewing the record and the arguments of counsel, the court does not reexamine the

issues de novo, Sisco v. United States Dep't of Health & Human Servs., 10 F.3d 739,

741 (10th Cir. 1993), nor does it re-weigh the evidence or substitute its judgment for that

of the Commissioner, Salazar v. Barnhart, 468 F.3d 615, 621 (10th Cir. 2006).  Thus,

even when some evidence may have supported contrary findings, the court "may not

displace the agency's choice between two fairly conflicting views," even if the court may

---

[1]The AR was conventionally filed.

4

have "made a different choice had the matter been before it de novo." <u>Oldham v.</u>

<u>Astrue</u>, 509 F.3d 1254, 1257-58 (10th Cir. 2007).  This court has applied this standard to

each of the challenges raised by plaintiff in this appeal.

An individual "shall be determined to be under a disability only if his physical or

mental impairment or impairments are of such severity that he is not only unable to do

his previous work but cannot, considering his age, education, and work experience,

engage in any other kind of substantial gainful work which exists in the national

economy . . . ."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).  The Commissioner has

developed a five-step sequential evaluation process for determining whether a claimant

is disabled under the Act.  <u>See</u> <u>Williams v. Bowen</u>, 844 F.2d 748, 750-52 (10th Cir. 1988)

(describing the five steps in detail).  "If a determination can be made at any of the steps

that a claimant is or is not disabled, evaluation under a subsequent step is not

necessary." <u>Id.</u> at 750.  "The claimant bears the burden of proof through step four of the

analysis." <u>Neilson v. Sullivan</u>, 992 F.2d 1118, 1120 (10th Cir. 1993).  At the fifth step,

the burden shifts to the Commissioner to show that the claimant can perform work that

exists in the national economy.  <u>Id.</u>

Here, at step one, the ALJ determined that the plaintiff has not engaged in

substantial gainful activity since June 4, 2009, the alleged onset date. (AR 20).   At

step two, the ALJ found that the plaintiff has severe impairments, namely, affective

disorder, anxiety-related disorder, personality disorder, and sequelae of prior shoulder

injury.  (AR 20).  Next, at step three of the sequential evaluation process, the ALJ found

that the plaintiff does not have an impairment or combination of impairments that meet

or medically equal the severity of one of the impairments contained in the Listings.  (AR

20).  At step four, the ALJ found that the plaintiff has the residual functional capacity

("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b),

consisting of simple, unskilled tasks, with low stress, no frequent or prolonged contact

with supervisors, coworkers, or the general public, and no overhead reaching.  (AR 21).

The ALJ then determined that the plaintiff is unable to perform any past work.  (AR 26).

Furthermore, the ALJ found that the plaintiff, who was age 44, was a "younger

individual" on the alleged disability onset date, has at least a high school education, and

is able to communicate in English.  (AR 26-27).  Considering plaintiff's age, education,

work experience, and RFC, the ALJ found that there are jobs that exist in significant

numbers in the national economy that plaintiff can perform.  In making this finding, the

considered the testimony of the VE who had testified that given all of these factors, the

individual would be able to perform the requirements of representative occupations such

as Production Assembly, Electronics Worker, Dry Cleaner (but in the back, not in the

front).  (AR 27).  Consequently, the ALJ determined that the plaintiff has not been under

a disability, as defined in the Act, from June 4, 2009, through the date of the decision,

April 26, 2013.  (AR 28).

## ANALYSIS

**Development of the Record.**  Plaintiff asserts that the ALJ failed to develop an

adequate record providing an assessment of plaintiff's severe depression diagnosis and

insomnia.  Moreover, plaintiff contends that the ALJ failed to develop the record as to

how or why one aspect of Dr. Benson's medical opinions was inconsistent or

unsupported by the evidence.  Through counsel, plaintiff had requested the ALJ to ask

6

Dr. Benson to complete a re-evaluation of the plaintiff, but the ALJ declined to do so. (AR at 384).  Furthermore, plaintiff notes that the ALJ found Dr. Morton's assessment of the plaintiff's GAF level at 45-50 to be inconsistent with plaintiff's limitations.  Through counsel plaintiff had asked the ALJ to subpoena Dr. Morton to testify at the hearing for further questioning and to further develop the record, but again, the ALJ declined to do so.  Plaintiff asserts that the ALJ's failure to seek further information and clarification from both Drs. Benson and Morton was a failure to develop an adequate record.

This court finds that this argument fails.  "[A]dministrative disability hearings are nonadversarial . . . and the ALJ has a duty to ensure that an adequate record is developed during the disability hearing consistent with the issues raised."  Wall v. Astrue, 561 F.3d 1048, 1062-63 (10th Cir. 2009) (internal quotation omitted).  "This duty to develop the record pertains even if the claimant is represented by counsel."  Thompson v. Sullivan, 987 F.2d 1482, 1492 (10th Cir. 1993).  Here, the ALJ's discussion of the evidence demonstrates that the record was fully developed.  It contains plaintiff's treatment records, albeit scarce, and the agency also obtained two thorough consultative examinations.  (AR 287-91, 329-34).  The ALJ considered all of the medical evidence, and explained his rationale.  Moreover, as found below, there is substantial evidence to support his RFC finding.  No more was required.

**Weighing of Medical Source Evidence.**  Plaintiff asserts that the ALJ failed to apply the correct legal standards in weighing the medical source evidence.  "Generally an ALJ should give greater weight to the opinion of a treating physician than to that of a consultant or non-examining physician, . . . but opinions from treating physicians are not dispositive . . . ."  Barnhill-Stemley v. Colvin, 607 Fed. Appx. 811, 816 (10th Cir. Apr. 23,

7

2015) (citations omitted).  "A treating physician's opinion must be given controlling

weight if it is supported by medically acceptable clinical and laboratory diagnostic

techniques and is not inconsistent with other substantial evidence in the record."  Knight

ex rel. P.K. v. Colvin, 756 F.3d 1171, 1176 (10th Cir. 2014) (internal quotation marks

omitted).  "Where . . .  the ALJ decides not to give controlling weight to a treating

physician's opinion, the ALJ must decide whether the opinion should rejected altogether

or assigned some lesser weight."  Newbold v. Colvin, 718 F.3d 1257, 1265 (10th Cir.

2013) (internal quotation marks omitted).  The ALJ must give good reasons for the

weight he assigns.  See Watkins v. Barnhart, 350 F.3d 1297, 1301 (10th Cir. 2003).

"Even if an opinion is not entitled to controlling weight, the ALJ must still weigh the

opinion in light of the factors set forth at 20 C.F.R. []§ 404.1527 . . . ."  Mendoz v. Colvin,

588 Fed. Appx. 776, 783 (10th Cir. Oct. 21, 2014).  The factors to be considered are:

> (1) the length of the treatment relationship and the frequency of the
> examination; (2) the nature and extent of the treatment relationship,
> including the treatment provided and the kind of examination or testing
> performed; (3) the degree to which the physician's opinion is unsupported
> by relevant evidence; (4) consistency between the opinion and the record
> as a whole; (5) whether or not the physician is a specialist in the area
> upon which an opinion is rendered; and (6) other factors brought to the
> ALJ's attention which tend to support or contradict the opinion.

Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004) (quoting Watkins, 350 F.3d

at 1301).  The ALJ need not explicitly discuss each factor, see Oldham, 509 F.3d at

1258, but must be sufficiently specific to permit meaningful review.  Giuliano v. Colvin,

577 Fed. Appx 859, 862 (10th Cir. Sept. 2, 2014).

Here, plaintiff notes certain records, diagnoses, and opinions, such as from the

Denver Reception and Diagnostic Center ("DRDC"), Michelle Bennett, M.S., L.P.C.,

8

Ms. Bradley at High Plains Community Center, consultative examiner Dr. Benson, and treating physician Margaret Loewen, M.D.  In addition, he list various prescribed medications.  Plaintiff contends that despite the consistencies with the rest of the medical records, the ALJ gave no weight to the opinions of Ms. Bradley and Dr. Loewen and then afforded significant weight to the opinions of Dr. Benson, except for Dr. Benson's opinions regarding plaintiff's inability to maintain a schedule.   Plaintiff asserts that opinion regarding an inability to maintain a schedule is consistent with the rest of Dr. Benson's findings and is supported by Dr. Loewen's and Ms. Bradley's findings. Plaintiff contends that the ALJ may not disregard an opinion simply because that opinion would eliminate work available to a plaintiff; rather, the ALJ has a duty to provide the specific, legitimate reasons for disregarding a physician's opinion. Furthermore, plaintiff notes that the ALJ afforded considerable weight to the opinions of non-examining doctor Gayle Frommelt, Ph.D., a State agency psychologist who evaluated plaintiff's file.  Plaintiff contends that the ALJ failed to detail specific, legitimate reasons for assigning little weight to the opinions of treating physicians and determining the weight to be assigned a non-treating physician.

    The court finds no reversible error.  The ALJ found that the medical evidence indicates that the plaintiff has a history of psychologically based problems.  While incarcerated, plaintiff received mental health treatment for depression, in partial remission, and personality disorder.  The DOC medical records indicate that in April 2009 plaintiff was medication compliant and stabilizing on medications.  He was paroled in June 2009, to live at home.  On June 13, 2009, plaintiff went to the High Plains Community Health Center for a post-parole checkup where on examination he was

oriented times three, in no acute distress, with normal cognitive functioning and speech, and his mood was euthymic.  The ALJ noted that Nurse Practitioner Bradley reported a diagnostic impression of heartburn, benign essential hypertension, hyperlipoproteinemia, seasonal pattern depression, and insomnia related to axis I/II mental disorder.  (AR 24).

The ALJ also noted that a consultative examination and review of the DOC medical records was done by Dr. David R. Benson, Ph.D. in October 2009.  Dr. Benson noted objective medical signs and findings consistent with the diagnoses of anxiety disorder, not otherwise specified; history of alcohol abuse in reported remission; and narcissistic and dependent personality traits.  He found the plaintiff's global assessment of functioning as 57, which the ALJ noted indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.  More specifically, the ALJ noted that Dr. Benson opined that plaintiff's ability to recall places and work tasks, to comprehend and recall short, simple instructions, and to maintain work routines without close supervision, and to make simple work-related decisions were not significantly limited.  In addition, Dr. Benson opined moderate limitations in the plaintiff's ability to understand and remember complex procedures, to carry out detailed instructions, to be able to work around others without being overly distracted by them, to maintain a work schedule without the interference of psychologically based problems, and to maintain a work pace and remain on task, to interact appropriately with coworkers and the general public, to accept instructions and constructive criticism, to react appropriately to changes at work, to behave in a safe fashion, to use public transportation to unfamiliar places, and to make and pursue goals independently.  He also indicated mild to

10

moderate limitations in the ability to maintain attention to tasks for extended periods, as well as moderate to marked limitations on being able to perform activities within a schedule, attend work regularly, and get to work on time.  With the exception of marked limitations on being able to perform activities within a schedule, attend work regularly, and get to work on time, the ALJ found that Dr. Benson's opinion is supported by the objective findings, plaintiff's presentation, and Dr. Benson's "otherwise reasonably well summarized narrative report."  (AR 25).  The ALJ found, however, that marked limitations on being able to maintain a schedule is not consistent with a global assessment of functioning of 57.  (AR 25).  The ALJ determined that when considering the record as a whole, this specific limitation appears inappropriate and excessive and thus gave significant weight to Dr. Benson's opinion with the noted exception.

The ALJ also discussed the report of William E. Morton, Psy.D., who conducted a consultative psychological examination in January 2013 and diagnosed posttraumatic stress disorder, social phobia, and major depressive disorder, moderate.  (AR 26).  In that discussion, the ALJ noted that Dr. Morton opined that there are minimal limitations regarding remembering and understanding instructions, procedures, and locations, and maintaining attention, concentration, and pace.  He also found mild limitations regarding carrying out instructions.  Moderate limitations were reported regarding interacting and responding appropriately with supervisors, coworkers, and the public, using good judgment, and responding appropriately to changes in the workplace.  The ALJ found that Dr. Morton's opinion was supported by objective medical signs and findings and was not inconsistent with the other substantial evidence of record.  The ALJ, however found that Dr. Morton's opinion was inconsistent with his assessed global assessment

of functioning score of 45-50, which is more consistent with serious symptoms or functional impairment.  (AR 26).

Furthermore, the ALJ also discussed the opinions of Nurse Practitioner Bradley and Dr. Loewen and articulated his reasons for discounting their conclusions (AR 25-26), including that the finding of disability is an issue reserved to the Commissioner and that their opinions are not supported by their contemporaneous treatment records.  Ms. Bradley's notes indicated that plaintiff was euthymic (at a time he was out of the house at an appointment) and was "doing better, going out more, and enjoying activities."  (AR 320).  Furthermore, regarding Dr. Loewen's opinion, the ALJ noted that it was not consistent with other substantial evidence of record, such as Dr. Morton's examination report.  Defendant notes that Dr. Loewen's two opinions were drafted one year apart, and there are no other treatment records from the time period even though plaintiff claimed he saw Dr. Loewen every three months.

In addition, the ALJ considered the opinion of Dr. Frommelt, a state agency psychologist who reviewed plaintiff's medical records and determined that plaintiff could perform work of limited complexity that could be learned in three months, was able to manage social interactions that were not frequent or prolonged, and should be limited from intensive contact with the general public.  (AR 35-39).  The ALJ found that this opinion was supported by and consistent with the record as a whole and thus gave it substantial weight.  (AR 25).

This court finds that the ALJ provided a thorough summary the medical evidence of record, including the reports of the treating, consultative, and non-examining medical providers, and he articulated legally sufficient reasons for the weight he gave to the

various providers.  Upon review of the ALJ's detailed decision as a whole and the

administrative record, this court finds no reversible error.  The question before this court

is not whether the evidence of record could reasonably support other conclusions.

Rather, the court looks to see if the decision is supported by substantial evidence and

applied the correct legal standards.  This court finds that the ALJ performed the required

analyses and applied the correct legal standards, and his conclusion that the certain

providers' opinions are entitled to little or no weight are not inconsistent with the

substantial evidence in the record.

**Plaintiff's RFC.**  As noted above, the ALJ found that the plaintiff has the RFC to

perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), consisting of

simple, unskilled tasks, with low stress, no frequent or prolonged contact with

supervisors, coworkers, or the general public, and no overhead reaching.  (AR 21).

Plaintiff contends that this determination is not supported by any substantial evidence.

This court disagrees.

> . . . A claimant's RFC to do work is what the claimant is still
> functionally capable of doing on a regular and continuing basis, despite his
> impairments: the claimant's maximum sustained work capability. The
> decision maker first determines the type of work, based on physical
> exertion (strength) requirements, that the claimant has the RFC to
> perform. In this context, work existing in the economy is classified as
> sedentary, light, medium, heavy, and very heavy. To determine the
> claimant's "RFC category," the decision maker assesses a claimant's
> physical abilities and, consequently, takes into account the claimant's
> exertional limitations (i.e., limitations in meeting the strength requirements
> of work). . . .
>
> If a conclusion of "not disabled" results, this means that a significant
> number of jobs exist in the national economy for which the claimant is still
> exertionally capable of performing. However, . . . [t]he decision maker
> must then consider all relevant facts to determine whether the claimant's
> work capability is further diminished in terms of jobs contraindicated by

nonexertional limitations.

. . .

Nonexertional limitations may include or stem from sensory impairments; epilepsy; mental impairments, such as the inability to understand, to carry out and remember instructions, and to respond appropriately in a work setting; postural and manipulative disabilities; psychiatric disorders; chronic alcoholism; drug dependence; dizziness; and pain. . . .

Williams, 844 F.2d at 751-52.  In deciding that plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy, the ALJ has to determine plaintiff's RFC based on all the relevant medical and other evidence in the case record.  RFC determinations are for the ALJ to make "based on the entire case record, including the objective medical findings and the credibility of the claimant's subjective complaints."  Poppa v. Astrue, 569 F.3d 1167, 1170-71 (10th Cir. 2009).  See 20 C.F.R. § 404.1546 (providing ALJ is responsible for assessing RFC).

Here, plaintiff asserts that the RFC developed by the ALJ does not incorporate all of the plaintiff's well-documented nonphysical limitations, namely, anxiety, depression, insomnia, inability to interact appropriately with supervisors, co-workers, and the public and inability to maintain focus and attention and stay on task.  Plaintiff notes that pursuant to SSR 85-15 and POMS DI 25020.010B.3, even unskilled work requires, among other things, the following abilities:

1.  Maintain attention for extended periods of two-hour segments (concentration not critical);
2.  Maintain regular attendance and be punctual within customary tolerances (these tolerances are usually strict);
3.  Work in coordination with or in proximity to others without being unduly distracted by the;
4.  Get along with co-workers or peers without unduly distracting them or

exhibiting behavioral extremes;

5.      Accept instruction or respond appropriately to criticism from supervisors;
6.      complete a normal workday and work week without interruption from
        psychologically-based symptoms; and
7.      Perform at a consistent pace without an unreasonable number and length
        of rest periods. (These requirements are usually strict.)

(Docket No. 12 at 12).

        Plaintiff further notes that in any level of work, whether skilled, semi-skilled, or

unskilled, a person must maintain attention and concentration and possess the ability to

carry out instructions, maintain work efficiency, and maintain a competitive pace to

accomplish the job tasks.  Plaintiff asserts that his difficulties in his ability to maintain

work efficiency, the likelihood of missing work due to his anxiety and depression, and

difficulties in his ability to maintain his concentration and attention would negatively

impact potential employment.  Nevertheless, in the hypothetical posed to the VE, the

ALJ only included restrictions such as light duty, no overhead reaching, limited to low-

stress activities, infrequent or no prolonged contact with supervisors and coworkers,

and little or no contact with the general public.

        Plaintiff asserts that when the ALJ found plaintiff unable to return to his past

work, the burden of proving the existence of alternate employment shifted to the

Commissioner, and the ALJ's failure to use all of the plaintiff's nonphysical limitations in

developing the RFC profile and in posting hypothetical questions to the VE was error.

Therefore, plaintiff contends that the ALJ's determination of plaintiff's RFC is not

supported by substantial evidence, and the ALJ allegedly failed to follow the proper

analysis for developing plaintiff's RFC.

        Based on the record as a whole, however, the court finds that there is substantial

evidence to support the ALJ's findings concerning the plaintiff's limitations and RFC.

The ALJ specifically noted that plaintiff alleges disability due to mental illness,

depression, and PTSD, reporting that his illnesses limit his ability to work because he

cannot multitask, cannot concentrate on what he is supposed to be doing, always feels

overwhelmed, and is very depressed. (AR 22). The ALJ then in great detailed

reviewed the testimony of plaintiff and plaintiff's wife at the administrative hearings (AR

22-24). As noted above, the ALJ also assessed the reports of the treating and

consultative medical personnel (AR 22-26), including their opinions concerning plaintiff's

RFC which noted the degree of limitation in various areas of functioning. Included in the

ALJ's analysis was consideration of plaintiff's various alleged nonphysical limitations,

i.e., anxiety, depression, insomnia, inability to interact appropriately with supervisors,

co-workers, and the public, and inability to maintain focus and attention and stay on

task. The ALJ's RFC finding also took into account plaintiff's social limitations.

Plaintiff's past work was skilled, but the ALJ limited plaintiff to performing simple,

unskilled tasks, with low stress, no frequent or prolonged contact with supervisors,

coworkers, or the general public. As noted by the defendant, unskilled work involves

working with things, rather than people, see Conkle v. Astrue, 487 Fed. Appx 461, 462

(10th Cir. Oct. 12, 2012) ("the primary work functions in the bulk of unskilled work relate

to working with things (rather than people or data)"); Montoya v. Colvin, 2014 WL

7403231 (D. Colo. Dec. 29, 2014); and concentration is not critical for unskilled work.

POMS DI 25010.010 § (B)(3), 2001 WL 1933437 (the capacity to perform unskilled work

includes the ability to maintain attention for extended periods of two-hour segments -

concentration is not critical). Upon review of the record as a whole, this court finds that

16

the ALJ's RFC finding is supported by substantial evidence .

**Credibility Determination.**  Plaintiff asserts that the ALJ failed to apply the proper legal standard in assessing plaintiff's credibility.  Plaintiff notes that at the administrative hearings, he described his inability to control his anxiety.  At the first hearing, he testified that his anxiety causes him to feel as though "everybody is watching me or judging me and I don't feel like I should be judged."  (AR 389).  When asked by the ALJ at the third hearing why he thought he could not work, plaintiff described what he guessed might be panic attacks when he is in public places with many people.  (AR 419).  Plaintiff further notes that his wife corroborated plaintiff's testimony, stating he will panic in public, get fidgety, and hyperventilate.  (AR 430).  At the first hearing, she testified that plaintiff is "afraid everyone is out to get him.  He's afraid to be around people."  (AR 392).

Furthermore, plaintiff asserts that his statements regarding his anxiety are corroborated by medical evidence, i.e., Dr. Morton diagnosed him with Social Phobia (AR 331), Ms. Bradley noted plaintiff's inability to relate appropriately with the public (AR 313), and Dr. Benson noted plaintiff's moderate limitations regarding social interactions (AR 291).

Plaintiff further points out testimony by him and his wife at the various hearings regarding his inability to stay on task or complete tasks and maintain attention.  (AR 392, 393, 418, 431, 432, 433).  Plaintiff asserts this testimony is corroborated by medical opinion evidence, i.e., Dr. Benson found plaintiff's ability to maintain attention to tasks for extended periods is mildly to moderately limited, as is his ability to perform activities within a schedule, attend work regularly, and get to work on time.  (AR 290-

17

91).

In addition, plaintiff notes that both he and his wife testified regarding his symptoms of depression and that his wife testified that she administers his medications because at one point he stopped taking them, explaining he was doing so because he wanted to die.  (AR 434).

Finally, plaintiff notes that during the third hearing, the ALJ asked plaintiff whether he had difficulty finding a job because of his 2006 criminal conviction for sexual assault (AR 419-20), and plaintiff explained he had unsuccessfully tried to obtain and retain employment not because of his past criminal conviction, but because of his anxiety, depression, and mental health needs.  Plaintiff claims he fairly stated his inability to obtain or maintain employment stems from his mental limitations and an inability to maintain concentration and stay on task, which allegedly manifest as fatigue and days in which he locks himself in a bedroom and cries.  (AR 432).

Plaintiff contends the ALJ improperly determined that plaintiff's claims could not be objectively verified with any degree or reasonable certainty and thereby found him not credible.  According to plaintiff, SSR 96-7p does not set forth a test or standard which requires a claimant's statement be objectively verified within a reasonable degree of certainty.  Plaintiff asserts that on the contrary, SSR 96-7p proposes a claimant's statements about his symptoms or about the effect the symptoms have on his ability to work "may not be disregarded solely because they are not substantiated by objective evidence."  Furthermore, plaintiff asserts that the records from Drs. Loewen, Benson, and Morton, Ms. Bennett, and Ms. Bradley all corroborate the plaintiff's symptoms and fail to present evidence of malingering or exaggeration of symptoms.

18

This court finds, however, that the ALJ reasonably evaluated the plaintiff's credibility.  "Credibility determinations are peculiarly the province of the finder of fact, and [the Court] will not upset such determinations when supported by substantial evidence."  Wilson v. Astrue, 602 F.3d 1136, 1144 (10th Cir. 2010) (internal quotation marks omitted).  Here, the ALJ stated that after careful consideration of the evidence, he found that the plaintiff's medically determinable impairments could not reasonably be expected to cause the alleged symptoms.  (AR 23).  Nevertheless, the ALJ further found that the plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible.  (AR 23).  The ALJ then explained his finding, namely, that (1) the medical evidence did not establish any neurological deficits, (2) plaintiff has not required any ongoing treatment other than prescription medical for pain or other symptoms, (3) plaintiff has not demonstrated that his prescription medications were not effective or that they caused significant adverse side effects, (4) plaintiff has not established that he must use modalities other than medication to lessen his symptoms, which would limit his ability to perform basic work-related activities, (5) his alleged limited daily activities could not be objectively verified with any reasonable degree of certainty, (6) even if his daily activities were truly as limited as alleged, it was difficult to attribute that degree of limitation to the plaintiff's medical conduction, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in the ALJ's decision.  (AR 23).  The ALJ said that "[o]verall, the [plaintiff's] reported limited daily activities are considered to be outweighed by the other factors discussed in the ALJ's decision."  (AR 23).  He found the plaintiff's complaints less than fully credible.  (AR 23).  The ALJ had noted in his decision that plaintiff was

looking for work and applying to motel maintenance jobs, but nobody was hiring.  (AR 22, 329, 410).

The ALJ also considered the plaintiff's wife's testimony.  However, he noted she was not a medical professional, and he found her claims were exaggerated, and not supported by the objective medical evidence in the record, and that she "failed to provide a plausible basis for determining any functional limitations the claimant may have." (AR 24).  As defendant notes in the response brief, while Ms. Martin testified that plaintiff was extremely depressed (AR 391), his mood was euthymic at appointments (AR 282, 315-16, 319, 321).  She also testified that he could not finish a task, yet Dr. Morton's examination showed minimal limitations with attention and concentration.  (AR 329-30).  She claimed plaintiff could not go anywhere, yet he regularly attended therapy sessions (e.g., AR 282 - normal speech, euthymic mood) and consultative examinations (e.g., AR 287-89 - drove himself, admitted he "does appointments" in the afternoons; 329-34 - drove 56 miles to appointment).  In addition, doctors opined he had only moderate limitations in social functioning (AR 52, 291, 333).

Upon review of the ALJ's entire decision and the entire administrative record, this court concludes that the ALJ correctly applied legal standards and that his credibility findings are supported by substantial evidence.

## CONCLUSION

While this court may well have reached a different conclusion concerning the weight to be given to the evidence of record, the court may not reweigh the evidence nor displace the agency's choice between two fairly conflicting views.  Based on the administrative record, and given the narrow scope of review, this court finds that the

20

ALJ's decision is supported by substantial evidence and the ALJ committed no legal

error in reaching his adverse finding.

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the ALJ's denial of disability and SSI benefits is **AFFIRMED**.

It is **FURTHER ORDERED** that each party shall pay its own costs and attorney

fees.


Date:  September 28, 2015                    s/ Michael J. Watanabe
      Denver, Colorado                          Michael J. Watanabe
                                      United States Magistrate Judge